## UNITED STATES DISTRICT COURT
## DISTRICT OF ALASKA

In the Matter of:           )

                       )

PAUL D. STOCKLER,      )

                       )

        Respondent.     )

_____)

Case No. 3:20-mc-00013-TMB
Alaska Sup. Ct. No. S-17685

ORDER REGARDING
DISCIPLINARY SUSPENSION

By order of the Supreme Court of the State of Alaska, Paul D. Stockler has been suspended from the practice of law in Alaska effective February 7, 2020, for a period of 18 months, with 6 months suspended.

In conformity with D.Ak.L.R. 83.1(g)(1)(A) of the United States District Court for the District of Alaska,

IT IS ORDERED:

1. That Respondent Stockler is suspended immediately from the practice of law before the United States District Court for the District of Alaska;

2. That unless respondent shows good cause in writing within twenty (20) days of the date of this order, the suspension contained in paragraph one above shall remain in full force and effect; and

3. That the Clerk of this Court shall mail to the respondent at his last known address a copy of this order, which mailing shall constitute proper notice.

DATED at Anchorage, Alaska, this 29th day of June , 2020 .

TIMOTHY M. BURGESS
Chief Judge

cc:

Honorable Sidney R. Thomas, Chief Judge, U.S. Court of Appeals for the Ninth Circuit
Honorable Timothy M. Burgess, Chief U.S. District Judge
Honorable Sharon L. Gleason, U.S. District Judge
Honorable Joshua M. Kindred, U.S. District Judge
Honorable H. Russel Holland, Senior U.S. District Judge
Honorable James K. Singleton, Jr., Senior U.S. District Judge
Honorable John W. Sedwick, Senior U.S. District Judge
Honorable Ralph R. Beistline, Senior U.S. District Judge
Honorable Gary A. Spraker, Chief Bankruptcy Judge
Honorable Deborah M. Smith, Chief Magistrate Judge
Honorable Matthew M. Scoble, Magistrate Judge
Honorable Scott Oravec, Magistrate Judge, Fairbanks
Molly Dwyer, Clerk, U.S. Court of Appeals for the Ninth Circuit
Brian D. Karth, Clerk of Court, U.S. District Court, Alaska
Stephanie Lawley, Chief Deputy Clerk, U.S. District Court, Alaska
Janet Stafford, Clerk, Bankruptcy Court, Alaska
Jennifer Meismer-House, Deputy-In-Charge, Fairbanks
Dorene Smith, Deputy-In-Charge, Ketchikan
Kate Crossley, Deputy-In-Charge, Juneau
Tracey Buie, Deputy-In-Charge, Nome
Alaska Bar Association, Disciplinary Section, 840 K St. Suite 100, Anchorage, AK 99501
Pisa Suon, Attorney Admissions Clerk, U.S. District Court, Alaska
Paul D. Stockler c/o Ray Brown, Attorney, 1049 W 5th Ave Ste 200, Anchorage, AK 99501

*Notice: This order is subject to correction before publication in the PACIFIC REPORTER 3d. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

# In the Supreme Court of the State of Alaska

| | |
|---|---|
| In the Disciplinary Matter Involving )<br><br>PAUL D. STOCKLER, )<br><br>Attorney. )<br>_____ ) | Supreme Court No. S-17685<br>ABA File No. 2016D058<br><br>**Order**<br><br>Order No. 0109 – February 7, 2020 |

Before: Bolger, Chief Justice, Winfree, Stowers, and Carney, Justices. [Maassen, Justice, not participating.]

Bar Counsel for the Alaska Bar Association and attorney Paul Stockler entered into a stipulation for discipline by consent that would result in an 18 month suspension, with 12 months to serve and 6 months of the suspension stayed, and a 2 year probationary period. The Bar Association's Disciplinary Board approved the stipulation and now recommends that we do so as well. The facts of Stockler's misconduct are set forth in the stipulation, which is attached as an appendix.[1] We take these facts as true,[2]

---

[1]     The stipulation has been edited to delete identifying references to others, for clarification, and to conform to supreme court technical requirements; attachments to the stipulation have been removed.

[2]     *Cf. In re Miles*, 339 P.3d 1009, 1018 (Alaska 2014) (stating we independently review entire disciplinary proceeding record while affording great weight to Disciplinary Board's findings of fact).

and we apply our independent judgment to the sanction's appropriateness.[3]

Based on the stipulated facts, we agree with the legal analysis as set out in the stipulation and find the following to be the appropriate sanction for Stockler's misconduct:

Effective the date of this order, Stockler is suspended for 18 months, with 6 months suspended. Following the year of suspension, Stockler will be on probation for two years. The details of the suspension and probation are as listed in the Stipulation For Discipline By Consent Pursuant to Alaska Bar Rule 22(h), Stipulated Discipline, section 73 (b)-(e). In addition Stockler shall pay $1,000 to the Alaska Bar Association within 60 days from entry of this order for disciplinary costs and fees incurred in this case. (This fee was not stated in the lodged Stipulation For Discipline By Consent Pursuant to Alaska Bar Rule 22(h), but is agreed to per the Disciplinary Board Approval Of Modification Of Stipulation For Discipline By Consent And Recommendation filed January 7, 2020, at page 47).

Entered by direction of the court.

Clerk of the Appellate Courts

Meredith Montgomery

cc:   Supreme Court Justices
      Publishers

Distribution:

Ray Brown
Attorney at Law
1049 W 5th Ave Ste 200
Anchorage, AK 99501

Philip Shanahan
Alaska Bar Association
P.O. Box 100279
Anchorage, AK 99510-0279

---

[3]   *Id.*

-2-                      ORD 0109

# BEFORE THE ALASKA BAR ASSOCIATION
## DISCIPLINARY BOARD

In the Disciplinary Matter )
Involving )
     )
     PAUL D. STOCKLER, )
     )
           Respondent. )

ABA File No. 2016D058
ABA Member No. 8606032

## STIPULATION FOR DISCIPLINE BY CONSENT PURSUANT
## TO ALASKA BAR RULE 22(h)

Pursuant to Alaska Bar Rule 22(g), Paul D. Stockler, Respondent, and
Louise R. Driscoll, Assistant Bar Counsel, stipulate as follows:

### JURISDICTION AND VENUE

1.      The respondent, Paul D. Stockler, is a member of the Alaska Bar
Association, admitted to practice law by the Supreme Court of Alaska.  Respondent
practiced law in the Third Judicial District, in Anchorage, Alaska.

2.      Stockler is subject to the Alaska Rules of Professional Conduct
(ARPCs) and to the Alaska Bar Rules, Part II (Rules of Disciplinary Enforcement),
giving the committee jurisdiction to hear this matter.

3.      This stipulation provides facts regarding Stockler's criminal conviction
for failure to file income tax returns and facts regarding testimony in an unrelated
court proceeding alleging that Stockler mishandled client money.

Appendix                                    -1-                                    ORD 0109

## BACKGROUND FACTS

### The Criminal Conviction

4.      On June 9, 2014, Stockler signed a plea agreement admitting to three misdemeanor counts of willful failure to file returns for tax years 2006, 2008, and 2009, in violation of Title 26, United States Code, Section 7203. Stockler timely self-reported through counsel to Alaska Bar Counsel.

5.      For tax years 2006, 2008, and 2009, Stockler was required to report self-employment earnings from his law practice on a Schedule C attached to his U.S. individual income tax returns, but he willfully chose not to do so.

6.      The elements of the charges to which Stockler pled guilty follow:

### Count I:

1.      Stockler was required to file a U.S. individual income tax return for the calendar year ending December 31, 2006;

2.      Stockler failed to file a U.S. individual income tax return by October 15, 2007, the date his tax return was due pursuant to his request for an automatic extension of time, as required by Title 26 of the United States Code; and

3.      In failing to do so, Stockler acted willfully.

### Count 2:

1.      Stockler was required to file a U.S. individual income tax return for the calendar year ending December 31, 2008;

2.      Stockler failed to file a U.S. individual income tax return by April 15, 2009 as required by Title 26 of the United States Code; and

3.      In failing to do so, Stockler acted willfully.

### Count 3:

1.      Stockler was required to file a U.S. individual income tax return

for the calendar year ending December 31, 2009;

2. Stockler failed to file a U.S. individual income tax return by April 15, 2010 as required by Title 26 of the United States Code; and

3. In failing to do so, Stockler acted willfully.

7. Stockler agreed he failed to file tax returns, but he disputed the amount of the tax loss and submitted the issue for adjudication by the court.

8. United States District Court Judge Sharon L. Gleason held a loss calculation hearing to determine whether Stockler was entitled to unclaimed deductions that resulted from his trading in securities as a day trader.

9. During the hearing, Stockler testified that he completed 964 stock trades in 2004, 665 trades in 2005, and 931 trades in 2006. Stockler claimed the level of his activity as a day trader qualified him for what is known as "mark-to-market" treatments as a person engaged in a trade or business as a trader in securities. Stockler testified that his accountant failed to tell him he was entitled to hold himself out as a trader.

10. Stockler's day trading records for 2004 and 2005 documented substantial day trading losses. Stockler stated if he had made a valid mark-to-market election for 2005 and 2006, he would have received a substantial tax benefit in 2006, 2008, and 2009. As such, any tax liability for the years in question would have been largely or completely eliminated due to his substantial day trading losses.

11. The Court agreed that Stockler was "spectacularly unsuccessful" as a day trader. But the Court, rejecting Stockler's argument that he qualified for "mark-to-market" treatment, declined to credit the unclaimed deductions.

12. The Court found Stockler was not engaged in the business of being a trader of securities during the years 2005 and 2006 and did not otherwise comply

Appendix                                  -3-                        ORD 0109

with the requirements under 26 U.S.C. § 475(f). As a result, the Court found Stockler's tax liability was $886,058.

13.    On April 15, 2016, the court sentenced Stockler to 14 months of imprisonment, a $10,000 fine and $886,058 in restitution to the IRS. The sentencing range was predicated in part under the sentencing guidelines based on the amount of calculated tax loss as found by the court.

14.    Stockler filed an appeal to the U.S. Court of Appeals for the Ninth Circuit. Stockler argued the U.S. District Court erred by concluding Stockler was not in the business of being a trader because his trading was not substantial and not sufficiently continuous, thereby declining Stockler mark-to-market status. Stockler contended the court erred by finding a tax loss of $886,058.

15.    The U.S. Court of Appeals for the Ninth Circuit affirmed Stockler's conviction and sentence. Stockler has completed his sentence of incarceration.

16.    On April 19, 2016, under Bar Rule 26, Bar Counsel filed notice of the criminal conviction with the Alaska Supreme Court with a certified copy of the judgment entered against Stockler in U.S. District Court.

17.    Bar Rule 26(b) defines "serious crime" as follows:

> (b) Definition of Serious Crime. The term "serious crime" shall include any crime which is or would be a felony in the State of Alaska and shall also include any lesser crime a necessary element of which, as determined by the statutory or common law definition of such crime, involves conduct as an attorney, interference with the administration of justice, false swearing, misrepresentation, fraud, deceit, bribery, corruption, extortion, misappropriation, theft, or an attempt or a conspiracy or solicitation of another to commit a "serious crime."

18.    In an order dated May 2, 2016, the Supreme Court found Stockler's conviction did not constitute a "serious crime," under the existing Bar Rule 26(b) for

Case 3:20-mc-00013-TMB   Document 1   Filed 07/27/20   Page 8 of 26

purposes of interim suspension, and referred the matter to the Alaska Bar Association for whatever action Bar Counsel deemed warranted. The Bar initiated formal proceedings under Bar Rule 26(h).

19. There were also other issues that arose not directly related to the criminal conviction.

20. Mark Avery, a former Anchorage prosecutor, was named one of three trustees running the $350 million May and Stanley Smith Charitable Trust and the $150 million May Smith Trust, shortly after the death of his lawyer father who had been a trustee and trust attorney for the trusts.

21. In 2005 the two other May Smith trustees authorized a $52 million loan from the May Smith Trust to Avery. The alleged intent was to create an aviation company to use in part for trust business.

22. Avery used some of the money to buy Security Aviation, an Alaska aviation company, as well as a pair of corporate jets, World War II vintage planes, Czech jet fighters, and Soviet-era rocket launchers.

23. Around the time Avery was spending trust money to fund new businesses and to purchase aircraft, he hired Robert Kane as a consultant for $5,000 a month. By the summer of 2005, Kane's salary rose to $20,000 a month. Avery and Kane spoke about expanding the aviation business to include a business providing military training services.

24. The FBI began to investigate Avery and Security Aviation on issues relating to trust fraud and the allegedly illegal purchase of rocket launchers with trust money. In early February 2006 the FBI and other federal agencies executed search warrants at hangers and offices associated with Security Aviation.

25. On February 22, 2006, Kane was indicted on four counts, including conspiracy to receive an unregistered destructive device, along with possession,

Appendix                          -5-                          ORD 0109

attempted possession and unlawful transportation of the unregistered launchers. Conviction on all counts could result in 20 years in prison and a $1 million fine. Security Aviation was also indicted for illegal possession and transportation of rocket pod launchers.

26.     On March 13, 2006, Stockler agreed to represent Kane on the criminal charges brought against Kane by the U.S. Department of Justice in the U.S. District Court in Anchorage, Alaska. Kevin Fitzgerald of Ingaldson, Maassen, and Fitzgerald was retained to help jointly represent Kane at the Security Aviation trial. Robert Bundy of Dorsey & Whitney represented Security Aviation.

27.     Stockler and other defense counsel argued throughout trial in U.S. District Court that the launchers were inoperable and just for show.

28.     The criminal trial ran from May 15 to 26, 2006. The jury acquitted Kane and Security Aviation of all charges.

29.     Avery alleged that because Wells Fargo Bank pulled its line of credit for Security Aviation after criminal charges were filed, he had to liquidate aircraft to pay for the cost of defending against the criminal charges. Stockler was paid a significant retainer from Security Aviation funds. These funds were deposited into his trust account and were followed by a series of subsequent deposits, directly and by wire from Security Aviation for funding the defense of Kane as well as the funding of some of the defense of Avery and his company. These funds were used to pay, among other things, Kane's taxes and ancillary experts; defense costs and personal needs of Kane; payments to other defense counsel; and other expenses related to the litigation. Over the course of Stockler's involvement with these matters, more than $6 million was deposited into and disbursed from Stockler's trust account. Based on our review of available records, no apparent trust account violations were established.

30.     In July 2006 the trustees of the May Smith trust filed suit against Avery to remove Avery as a trustee and to recover the $52.125 million he had taken. Avery surrendered the Security Aviation stock to the trust.

31.     In August or September 2006 attorney Mark Ashburn contacted Stockler on behalf of the May Smith Trust and directed Stockler not to disburse any further funds provided to Stockler by Avery, Kane or Security Aviation.

32.     Avery filed a Chapter 7 petition for bankruptcy on October 23, 2006. William Barstow was appointed Chapter 7 trustee. Attorney Cabot Christiansen represented Barstow. On December 21, 2006, Barstow placed Security Aviation in Chapter 11.

33.     Stockler testified at a hearing in the Avery bankruptcy that money in his trust account was to fund the criminal trial, but that he didn't know the source of the funds that were wired into his trust account. Specifically, he didn't know which entity transferred the money, but that 99% of all the money placed into his account came from some "Avery entity."

34.     Stockler testified, "it [money] came in a piecemeal fashion and we spent it in piecemeal fashion, and when the criminal defense was over and that account was exhausted, then Mr. Avery started working on paying Rob Kane the money that he owed him. And I went and saw documentation from Mr. Avery that those were in fact valid debts of Security Aviation's, all of which, you know, I can go through one after the other." Stockler later testified with respect to funds in his E*trade account, "Rob Kane didn't want me to release the 2.8 million dollars that I sent back to Security Aviation either, but once that controversy arose, I wrote a check because I didn't want to be in the middle."

Case 3:20-mc-00013-TMB   Document 1   Filed 07/27/20   Page 11 of 26

35. Christianson, on behalf of the Bankruptcy Trustee, initiated an adversary proceeding against Stockler to recover proceeds received from Security Aviation and Kane. Trustee Barstow obtained a preliminary injunction which prohibited Stockler from disposing of any funds received from Avery entities without court approval. The injunction also applied to Stockler's transfers of cash or property received from Robert Kane and any Kane entity.

36. Over the course of the representation, Stockler was paid approximately $1.9 million in attorney's fees. Stockler, however, agreed to return $1.1 million of earned fees to resolve the adversary action that Barstow had filed to collect assets for the bankruptcy estate.

37. On March 5, 2007, the United States charged Avery for illegal conduct arising out of his transactions with the May Smith Trust. Avery stipulated that he abused his position as trustee to acquire more than $52.125 million from the May Smith Trust, that he provided a fraudulent justification to acquire trust funds, that the assets and businesses he acquired with the trust funds benefitted him, personally, and not the trust, and that he did not repay the trust funds used for his benefit. No one has alleged that Stockler was aware of this nefarious conduct.

38. The Alaska Supreme Court disbarred Avery on February 8, 2008, from the practice of law in the State of Alaska.

39. On April 19, 2008, U.S. District Court Judge Ralph Beistline sentenced Avery to 102 months in prison followed by 36 months of supervised release. The court ordered restitution of $52.125 million to the May Smith Trust.

40. In 2010, the U.S. Supreme Court issued a decision in a case of former Enron Corp. chief executive Jeffrey Skilling that said the kind of wire fraud to which Avery pleaded guilty only applied in cases of bribery and kickbacks. Avery had not been accused of bribery. The Ninth Circuit Court of Appeals agreed that what Avery

admitted doing was no longer a crime. A grand jury issued a new indictment accusing Avery of five counts of a different type of wire fraud and ten counts of money laundering.

41.    In January 2016 Avery's second trial for wire fraud, money laundering and bank fraud while spending $52.125 million dollars of May Smith Trust money on Security Aviation, other businesses, and personal goods, began in U.S. District Court.

42.    The government called 19 witnesses during the prosecution of its case against Avery. One of those witnesses, Barstow, the bankruptcy trustee, testified about Avery's bankruptcy proceedings in October 2006.

43.    The Alaska Dispatch News on February 18, 2016, published an article about Avery's ongoing trial, which included Barstow's testimony about asset recovery.

44.    The story reported that the prosecutor asked whether the trustee had recovered any of an outstanding $3.5 million and quoted Barstow's response as, "We never recovered any of those monies. Mr. Stockler wasn't putting those monies into interest bearing. He was day trading and he lost every one of those dollars." He later testified that he sued Stockler and recovered $1.1 million.

*Allegations of Stockler's Mismanagement of Client Funds in Security Aviation Matter*

45.    Stockler was paid a retainer for Kane's criminal defense from Security Aviation funds. The funds were deposited into his trust account. A series of subsequent deposits, directly and by wire from Security Aviation for funding the defense of Kane as well as funding some of the defense of Avery and his company, followed.

46.    In addition to representing Kane on criminal charges relating to the purchase of unregistered launchers, Stockler represented Kane on a variety of issues arising from Kane's provision of security and military type services to other entities.

Case 3:20-mc-00013-TMB   Document 1   Filed 07/27/20   Page 13 of 26

47. KeyBank Trust Account statements of deposits and withdrawals from March 31, 2006, through September 30, 2006, show more than $6 million was deposited into and disbursed from Stockler's trust account.

48. Based on counsel's review, funds used to pay Kane's taxes and personal needs, ancillary experts, defense costs, payments to other defense counsel and other litigation-related expenses apparently were drawn from Stockler's trust account.

49. After the conclusion of Stockler's representation of Kane in the criminal matter, Stockler allowed Kane to deposit funds into Stockler's personal E*Trade account. Kane explained he had been involved in numerous clandestine activities for the U.S. government as well as other governments in other parts of the world and he had no relationship with a bank during this time. Because Kane had no bank account, Stockler allowed Kane to deposit monies into Stockler's E*Trade account and Stockler provided funds upon request to Kane at various intervals. During a period of June through July 2006, a total of $5.425 million was deposited into the E*Trade account. Of that amount $3.625 million was from Security Aviation. Avery or Kane would approve the transfer and Stockler was shown promissory notes from Security Aviation to Kane for payment of allegedly legitimate debts. Stockler agrees that this was unwise and impermissibly commingled Stockler's own funds with Kane and Security Aviation's funds in Stockler's personal account.

50. Alaska Rule of Professional Conduct 8.3 addresses the reporting of professional misconduct. Rule 8.3(a) states:

> A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness, or fitness as a lawyer in other respects shall inform the appropriate disciplinary authority unless that lawyer reasonably believes that the misconduct has been or will otherwise be reported.

Appendix                                  -10-                                  ORD 0109

51. Kane, who was represented by counsel in the bankruptcy, and filed a claim against the Estate for funds owed him from Security Aviation, asserted no claim for funds from Stockler and never alleged Stockler misappropriated funds.

52. On October 23, 2006, Cabot Christianson, on behalf of the bankruptcy trustee, filed a petition to recover proceeds received from Security Aviation and Kane. Stockler agreed to return $1.1 million of earned fees to resolve the adversary action.

53. Stockler provided financial documents to the bankruptcy trustee and his counsel during bankruptcy proceedings. Those records included an accounting of funds Stockler received from Security Aviation, including a summary of trust account transactions related to Security Aviation and Kane, and an accounting of funds deposited in Stockler's E*Trade account for the benefit of Kane. The bankruptcy trustee and his attorney scrutinized these financial records and never reported to Bar Counsel concerns relating to mishandling of client funds or misappropriation of client money by Stockler.

54. The bankruptcy trustee testified in 2016 that Stockler lost $3.5 million in day trading. No witness, adverse party, lawyer or judge in the bankruptcy proceedings reported to Bar Counsel concerns relating to mishandling of client funds or misappropriation of client monies by Stockler. Available trust account bank records and E*Trade account records have failed to confirm the allegation that the bankruptcy trustee was unable to recover $3.5 million because Stockler lost those dollars by day trading.

55. Alaska Bar Rule 18 discusses the statute of limitations for Bar grievances. Rule 18 requires that grievances "will be filed within five years of the time that the Complainant discovers or reasonably should discover the misconduct." Exceptions to Rule 18 include "traditional principles of tolling, equity, and due

process."

56.     Stockler denied that he misappropriated any funds entrusted to him or took any actions that were contrary to the directives provided to him by his client Kane.  Stockler acknowledged he was mistaken to allow Kane to use Stockler's personal trading account as a depository of funds belonging to Kane.

57.     Almost 13 years have passed since the Bankruptcy Court adjudicated and approved the bankruptcy.  Almost 13 years have passed since a jury acquitted Kane and Security Aviation of criminal charges.

58.     Mr. Stockler was released from incarceration on September 26, 2018 and from halfway house detention on October 29, 2018.

During all times relevant to this disciplinary matter, Mr. Stockler has cooperated fully with the Alaska Bar Association and has continued to practice law in the State of Alaska following his release after successfully completing MCLE Ethics requirements not possible to complete during his period of incarceration.

This stipulation was reached after lengthy negotiations, document review and discussions between counsel. The original stipulation was unanimously approved by the Board of Governors.

The alternative to a stipulated resolution will be a full evidentiary hearing before an Area Hearing Committee, subsequent review by the Board of Governors acting as the Discipline Board, and final review by the Alaska Supreme Court. That process is likely to take many months.  The parties agree that it is in the public interest to avoid further delay and expense in resolving the matter.

## DISCIPLINARY VIOLATIONS

### Count One
### Violation of Rule 8.4 (Misconduct)

59.     Under APRC 8.4(b) it is professional misconduct for a lawyer to

Case 3:20-mc-00013-TMB   Document 1   Filed 07/27/20   Page 16 of 26

"commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects."

60.     At the time Stockler failed to file his income tax returns, the misconduct did not meet the definition of a "serious crime" under Bar Rule 26(b). The parties agree, however, that Stockler, by willfully failing to file individual income tax returns for tax years 2006, 2008, and 2009, in violation of Title 26, United States Code, Section 7203, violated APRC 8.4(b).

## SANCTION ANALYSIS

61.     The American Bar Association Standards for Imposing Lawyer Sanctions (1986) ("ABA Standards"), adopted in *In re Buckalew*, 731 P.2d 48, 52 (Alaska 1986), and reported decisions of the Alaska Supreme Court, govern the sanctions for respondent's misconduct.

62.     Under ABA Standards 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

> (a) the duty violated;
>
> (b) the lawyer's mental state;
>
> (c) the potential or actual injury caused by the lawyer's misconduct; and
>
> (d) the existence of aggravating or mitigating factors.

63.     These factors are addressed in a three part methodology: (1) determine the first three factors; (2) determine recommended sanction; and (3) determine whether aggravating or mitigating circumstances exist. *In Re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

Appendix                                    -13-                        ORD 0109

## Part 1: Duty Violated; Lawyer's Mental State;
## Actual or Potential Injury
### A. Duty Violated

64.     Violation of ARPC 8.4(b) is a violation of the duty owed to the public to maintain the standards of personal integrity. *See* ABA Standards 5.0.

### B. Mental State

65.     Under the ABA standards:

" 'Intent' is the conscious objective or purpose to accomplish a particular result."

" 'Knowledge' is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result."

" 'Negligence' is the failure of the lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation."

66.     For purposes of the violations of the ARPCs listed above, Stockler acted knowingly.

### C. Actual or Potential Injury

67.     Stockler's repeated failure to file tax returns reflected a disrespect for the law and undermined the public confidence in the integrity of officers of the court. His indifference to his obligation to file tax returns timely hindered the federal government in its ability to administer the tax system and collect taxes. A tax loss of $886,058.00 was an actual injury to the United States Treasury and to the citizens of the United States.

### Part 2: Recommended Sanction under ABA Standards

68.     ABA Standards 5.1 sets out the sanctions for these violations. Section

Case 3:20-mc-00013-TMB   Document 1   Filed 07/27/20   Page 18 of 26

5.12 provides "[s]uspension is generally appropriate when a lawyer knowingly engages in criminal conduct which . . . seriously adversely reflects the lawyer's fitness to practice."

## Part 3: Aggravating and Mitigating Factors

69.     ABA Standards 9.0 sets out factors that may be considered in aggravation and mitigation.

70.     Factors that serve to aggravate under Section 9.22 include:

> Selfish motive (9.22(b));
>
> A pattern of misconduct (9.22(c));
>
> Substantial experience in the practice of law (Stockler was admitted to the Alaska Bar in 1986 and has substantial experience in the practice of law.) (9.22(i)).

71.     Factors that may serve to mitigate include:

> Absence of a prior disciplinary record (9.32(a));
>
> Full and free disclosure to disciplinary board or cooperative attitude toward proceedings (9.32(e));
>
> Character or reputation (9.32(g)); and
>
> Remorse (9.32(l)).

## OTHER AUTHORITY

72.     Stockler and Bar Counsel considered other disciplinary cases in Alaska involving willful failure to file tax returns in recommending an appropriate level of discipline. The following disciplinary cases provided guidance, but the parties agree that important distinctions in the facts of their cases warrant more serious discipline for Stockler.

> *In the Matter of Attorney George Vogt*, 642 P.2d 819 (Alaska 1982) (Vogt was convicted of two counts of failure to file a state income tax return, under state statute 43.20.335(c) (since repealed));

Appendix                           -15-                         ORD 0109

*In the Disciplinary Matter Involving William P. Bryson,*
Supreme Court No. S-6580 Order 09/16/94 (Following a
judgment of conviction against Bryson for failure to file an
income tax return the Alaska Supreme Court publicly
censured Bryson for conduct that adversely reflected on his
fitness to practice law in violation of former Disciplinary
Rule 1-102(A)(6)); and

*In the Disciplinary Matter Involving John W. Wood,*
Supreme Court No. S-6868 Order Entered February 10,
1995 (A judgment of conviction against Wood for failure
to file an income tax return warranted public censure by the
Alaska Supreme Court).

## STIPULATED DISCIPLINE

73.     Subject to approval by the Disciplinary Board of the Bar and by the
Alaska Supreme Court, Stockler and Bar Counsel agree that:

(a)     An 18-month suspension should be imposed with Stockler to
serve 12 months of the suspension, and with 6 months of the suspension stayed.  The
parties agree that the suspension will be effective after December 31, 2019.

(b)     The parties agree that Stockler will serve a two-year probation
with the probationary period to begin after Stockler serves the one year of suspension.

Prior to the start of his probation, Stockler will nominate a lawyer
experienced in his areas of practice who is acceptable to bar counsel to monitor
Stockler during the two-year probation period.  The lawyer shall examine Stockler's
practice to confirm that he is complying with the Rules of Professional Conduct,
particularly those related to law office management.  The lawyer shall make three
letter reports to bar counsel: (1) 6 months after the start of probation; (2) 12 months
after the start of probation; and (3) 18 months after the start of probation.  If, during
the probation period, Stockler commits a violation of Alaska Rule of Professional
Conduct 1.15 or 8.4 and if the Disciplinary Board or the Supreme Court imposes

Case 3:20-mc-00013-TMB   Document 1   Filed 07/27/20   Page 20 of 26

discipline for the new misconduct, the 6 months of stayed suspension for misconduct in the present case will automatically be imposed in addition to any discipline ordered for the new misconduct.

(c) Before he resumes practice after his suspension, Stockler must satisfactorily complete 6 hours of continuing legal education in legal ethics and 9 hours of continuing legal education in law office management courses approved by the Bar's CLE Director and Bar Counsel.

(d) Before he resumes practice after his suspension, Stockler is required to present a detailed plan acceptable to Bar Counsel regarding his proposed law practice financial procedures, including a plan for handling of client funds with mandatory quarterly auditing and reporting during his probationary period. Stockler shall pay all costs incurred by the accountant or bookkeeper for auditing his accounts and reporting to Bar Counsel.

(e) To demonstrate he has the moral qualifications required for admission to the practice of law in Alaska and that his resumption of the practice of law in Alaska will not be detrimental to the integrity and standing of the Bar, or to the administration of justice, or subversive of the public interest,[1] Stockler is required to show that during the suspension and probation he complied with all conditions and special conditions of supervision[2] set out in his judgment in *United States of America v. Paul D. Stockler*, Federal Case Number 3:14-cr-00059-RRB. If he does not, it will be grounds for the Alaska Supreme Court to find that he violated conditions of the stayed suspension and impose further discipline as it deems appropriate.

---

[1] *See* Alaska Bar Rule 29(c)(1).

[2] The Special Conditions of Supervision in Case Number 3:14-cr-00059-RRB are attached as Exhibit A. (attachment removed from this order)

DATED at Anchorage, Alaska, this 19th day of ~~May~~ August, 2019.

ALASKA BAR ASSOCIATION

/s/

By: _____
NELSON G. PAGE
Bar Counsel
Bar Member No. 7911121

DATED at Anchorage, Alaska, this 19th day of ~~May~~ August, 2019.

/s/
_____
PAUL D. STOCKLER
Respondent Attorney
Bar Member No. 8606032


DATED at Anchorage, Alaska, this 30th day of May, 2019.

DILLON & FINDLEY, PC

/s/
By: _____
RAY R. BROWN
Attorney for Respondent
Bar Member No. 8206012


\*     \*     \*     \*     \*

## CONSENT OF RESPONDENT

Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that Respondent admits to the allegations set forth above.

DATED this 19th day of ~~April~~ August, 2019, at Anchorage, Alaska.

/s/
_____
PAUL D. STOCKLER
Respondent Attorney
Bar Member No. 8606032

Appendix                                   -19-                                   ORD 0109

SUBSCRIBED AND SWORN to before me this 19th day of ~~May~~August, 2019.

/s/ Colleen Guffey

(SEAL)

Notary Public in and for Alaska
My commission expires: 6/26/2020

BEFORE THE ALASKA BAR ASSOCIATION
DISCIPLINARY BOARD

In the Disciplinary Matter     )
Involving                      )
                               )
    PAUL D. STOCKLER,          )
                               )
            Respondent.        )
_____)

ABA File No. 2016D058
ABA Member No. 8606032



## DISCIPLINARY BOARD APPROVAL OF MODIFICATION OF STIPULATION FOR DISCIPLINE BY CONSENT AND RECOMMENDATION

The attached Stipulation was reviewed by the Disciplinary Board at its May 2019 meeting, and after consideration, the Board voted to approve the Stipulation and to recommend its adoption by the Alaska Supreme Court.

Subsequent to the May 2019 meeting, the Stipulation was renegotiated and modified to extend the effective date. The Board approves the renegotiated and modified Stipulation and recommends its adoption by the Alaska Supreme Court.

DATED this 5th day of September, 2019 at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

Robert Stone
President
Disciplinary Board

ALASKA BAR
ASSOCIATION
BOX 100279
ANCHORAGE, ALASKA
99510

(907) 272-7469
FAX (907) 272-2932

G:\Ds\DCASE\2016\2016D058\Stipulation\Modification APPROVAL - 2019.doc